EMPLOYERS INSURANCE OF WAU-
SAU, and Motors Insurance
Corporation, Plaintiffs,

v.

TRITON LINES, INC. and Triton
Transworld Navigation, Inc.,
Defendants.

No. 88 Civ. 5276 (RWS).

United States District Court,
S.D. New York.

Feb. 2, 1989.

Healy & Baillie (William F. Losquadro and Matthew A. Marion, of counsel), New York City, for plaintiffs.

Philip V. Moyles, New York City, for defendants.

OPINION

SWEET, District Judge.

Defendants Triton Lines, Inc. ("Triton Lines") and Triton Transworld Navigation, Inc. ("Triton Transworld") (collectively, the "defendants") seek an order under 28 U.S.C. § 1404(a) transferring this suit to the United States District Court for the Southern District of Texas, Houston Division. For the reasons set forth below, this motion is denied.

*The Parties*

Plaintiff Employers Insurance of Wausau ("Wausau"), an insurance company incorporated in Wisconsin, conducts a marine insurance business through its Wausau Insurance Companies division, which has an office and place of business in Miami, Florida. Plaintiff Motors Insurance Corporation ("Motors"), an insurance company incorporated in New York, maintains an office and place of business in New York where it conducts a marine insurance business.

Lines, a Panamanian corporation, is the registered owner of the ocean going motor vessel Triton Trader (the "Trader") of Honduran registry. Transworld is a Texas corporation that acts as agent for Lines.

## The Facts

In November 1987, Triton hired Trinder & Norwood, Inc. ("Trinder"), a White Plains, New York insurance broker, to obtain marine hull and machinery insurance coverage (the "insurance") on the Trader. At the time, the Trader was docked in New London, Connecticut where it was loading a cargo of fiberboard destined for Israel.

Trinder negotiated the insurance with Wausau and Motors, each of whom bore 50% of the insured risk, effective as of November 2, 1987. The binder was effected by a December 10, 1987 telex from Trinder to Wausau in Miami, and confirmed by a December 14, 1987 telex from Wausau to Trinder and a December 14, 1987 telex from Trinder to Motors in New York. According to the defendants, the loss payees under the insurance included Lines, Transworld, Fred E. Thompson ("Thompson"), Andre P. Van Oosten ("Van Oosten"), and Bristol Financial, Inc. ("Bristol"), a Texas corporation. Trinder also obtained protection and indemnity insurance for the Trader from a London shipowners protection and indemnity association.

While the Trader was in New London, Connecticut, New London stevedores, Admiralty Group Limited ("Admiralty"), loaded the ship under the supervision of Van Oosten, who also signed the bills of lading. The bills of lading indicated that MDF Technology, Inc. ("MDF") was the shipper of the cargo. MDF also was the charterer of the vessel.

On December 11, 1987, the Trader sailed from New London to New York harbor to take on bunker fuel for the voyage. While in New York harbor, the Trader's Master communicated with the defendants' agent for New York harbor, Gateway Chartering of Cranford, New Jersey. Van Oosten was in Gateway's office during this communication.

On December 12, 1987, the Trader embarked for Israel. After two days at sea, the Trader's cargo shifted, and she took a list. The crew abandoned the ship the following day, and another vessel, the M.V. Norwind, took them to Pennsanken, New Jersey. Thereafter, a Canadian salvage tug towed the Trader to Shelbourne, Nova Scotia, where it was arrested by creditors and later sold at a judicial sale.

Believing that the defendants and Trinder had failed to disclose certain facts to them, Employers, on December 23, and Motors, on December 28, informed Trinder that the insurance was "null and void in view of misrepresentation and/or non-disclosure by the Assured of material circumstances during the negotiation of the contract of insurance ..." and the fact that "... the vessel at the inception of the policy was in an unseaworthy condition...."

## Prior Proceedings

Lines and Motors filed this action for declaratory relief on July 28, 1988. On October 11, 1988, they noticed the deposition of Trinder, which was scheduled to commence October 25, and of the Trader's Classification Society, Bureau Veritas ("Veritas"), whose principal American office is located in New York. This deposition, which initially was scheduled for October 26, has been adjourned, although Veritas has produced documents covered by the subpoena.

The defendants have commenced a suit in the District Court for the Southern District of Texas against Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship Mutual"), the Trader's protection and indemnity underwriter. Steamship Mutual has filed a motion to dismiss the Texas complaint for lack of *in personam* jurisdiction, or alternatively, to stay the Texas suit pending arbitration in London pursuant to the Rules of the Association.

On October 27, Bristol, a mortgagee of the Trader and a loss payee under the insurance, sued Wausau and Motors in Texas federal court.

## Change of Venue

A change of venue is governed by 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The moving party bears the burden to justify a change of venue. *See Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1207 (S.D.N.Y. 1980). That burden is heavy: "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Ayers v. Arabian Amer. Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y.1983) (" '[a]bsent a clear and convincing showing' that the balance of convenience favors the ultimate forum, discretionary transfers are not favored").

■ Several factors determine whether the defendant has met its burden on a motion to change venue. These include (a) plaintiff's choice of forum; (b) convenience of the parties; (c) convenience of the witnesses; (d) the relative ease of access to the sources of proof; (e) the availability of process to compel attendance of unwilling witnesses; (f) consideration of trial efficiency; and (g) the furtherance of the interest of justice. *See Town of Warwick v. New Jersey Dep't of Environmental Protection,* 647 F.Supp. 1322, 1323 (S.D.N.Y. 1986); *see also O'Neill v. Stanwood Corp.,* 577 F.Supp. 1001, 1003 (S.D.N.Y.1984).

■ Applying these factors here reveals that the defendants have failed to meet their burden of justifying a change of venue.

First, a number of the events material to this action occurred in New York City and its immediate environs. *See Leif Hoegh & Co. v. Alpha Motor Ways, Inc.,* 534 F.Supp. 624, 626 (S.D.N.Y.1982). The defendants sought to insure the Trader through Trinder, a White Plains, New York marine insurance broker that handled all negotiations between the parties, which included Motors, a New York corporation doing business from its New York City office. The negotiations for the insurance coverage, the factual representations underlying its issuance, and plaintiffs' return of premiums centered around Trinder, the sole broker to the transaction.

Other significant facts occurred in neighboring Connecticut and New Jersey. Van Oosten allegedly was present in New London, Connecticut when Admiralty loaded the vessel. Because the cargo shifted at sea two days later causing a list and her abandonment the following day, Admiralty's evidence is relevant to whether the defendants exercised due diligence at the inception of the policy, an additional ground for plaintiffs' rejection of coverage under the policy. In addition, Van Ooster used Gateway, the defendants' New Jersey agent, to communicate with the Trader's Master about curing deficiencies in certain navigational equipment.

Second, the parties' location does not justify disturbing the plaintiffs' choice of forum. Lines is a Panamanian corporation, Transworld is a Texas corporation, Motors is a New York corporation, and Wausau is a Wisconsin corporation doing business in Miami.

Third, most nonparty witnesses are located in or near New York. William Fieldman, the Trinder officer in charge of the marine department who negotiated with the insurers on behalf of the defendants and eventually placed coverage with the plaintiffs, works in White Plains, New York. His testimony concerning defendants' representations and nondisclosures regarding their financial fitness and the condition of their vessel, the negotiated terms of the insurance agreement, and plaintiffs' rejection of coverage will bear on this lawsuit. Other New York witnesses include officials at Motors who will testify concerning the defendants' representations, and at Veritas, who will testify as to the registration papers and physical condition and inspection of the Trader. Witnesses in Connecticut and New Jersey will testify about the loading and maintenance of the vessel.

Fourth, relevant sources of proof are located in New York. Although defendants claim that all books and records relating to Lines and Transworld, as well as both defendants, are located in Houston, they have failed to specify the volume of their records or to explain why transport-

ing them would be difficult. Further, many documents material to this action are located at Trinder's White Plains office, at Motors's New York office, and at Veritas's New York office.

Defendants argue that plaintiffs forum shopped for favorable law in this jurisdiction and that the presence of two recently filed actions in Texas requires the transfer of this litigation. Defendants' argument about the related cases, however, ignores the prevailing rule in the Second Circuit. As a general rule, the forum where an action is first filed takes priority over the forum where a subsequent action arising out of the same facts is filed. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir.1965), *cert. dismissed*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1060 (S.D.N.Y.1987).

The nexus between the underlying dispute and this forum makes New York more appropriate. Moreover, the two lawsuits filed in Texas are less advanced than this action. In the Bristol case, Wausau and Motors just recently was served with the complaint and in the other case, Steamship Mutual has contested jurisdiction. No answer has been filed and no discovery taken in either suit. Here, however, both sides have been conducting depositions and document discovery since the action was filed on July 28, 1988.

*Conclusions*

For the reasons set forth above, defendants' change of venue motion is denied.

It is so ordered.